IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BIOSOFT (AUSTRALIA) PTY LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>EXOTROPIN, LLC and DOES 1-5,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 2:25-cv-00016-JNP-DBP<br><br>Chief District Judge Jill N. Parrish<br><br>Chief Magistrate Judge Dustin B. Pead |

Defendant Extropin, LLC ("Defendant") brings this motion to dismiss or, in the alternative, transfer venue. ECF No. 16 ("Def.'s Mot."). For the reasons discussed below, the motion to dismiss is GRANTED.

BACKGROUND

Plaintiff Biosoft (Australia) Pty Ltd. is "a proprietary limited company organized under the laws of Australia" with its principal place of business in Australia. ECF No. 2 ("Compl.") ¶ 1. It "engages in the development, marketing, and sale of skincare products, including products under marks including 'EXO SKIN.'" *Id.* Defendant is a corporation incorporated in Delaware with its principal place of business in New York. *Id.* ¶ 2. It sells skincare products "under trademarks, including 'EXOCEUTICALS,' 'EXO SKIN SIMPLE,' 'EXO BODY,' 'EXO SUN,' 'EXO H-SERUM,' 'EXO C-SERUM,' 'EXO PLUS,' 'EXO MEN,' and 'EXO FACE.'" *Id.*

The dispute between the two parties began when Defendant sent a cease-and-desist letter to Plaintiff's Utah-based counsel, demanding that Plaintiff cease using the EXO SKIN mark with

a reply expected by October 10, 2024. Compl. ¶¶ 10–13, Ex. A. Between October 10 and February 14, 2025, Plaintiff and Defendant attempted to negotiate a settlement. Def.'s Mot. at 9. During this same period, Plaintiff initiated two legal actions against Defendant without providing Defendant any notice that it had been sued. On October 10, 2024, it filed an initial action in the U.S. District Court for the District of Utah, which it voluntarily dismissed on January 24, 2025 before attempting to serve Defendant.[1] *See Biosoft (Australia) Pty Ltd. v. Exotropin, LLC*, 2:24-cv-00762 (D. Utah Oct. 10, 2024). On January 8, 2025, Plaintiff filed the current action against Defendant, raising identical claims, but again made no effort to effectuate service. Compl. Then, on February 14, Defendant commenced an action in the U.S. District Court for the Southern District of Florida against Plaintiff and its distributor for trademark infringement and unfair competition, promptly serving Plaintiff on February 18.[2] *See Extropin, LLC v. DP Derm, LLC et. Al*, No. 25-cv-20713 (S.D. Fla Feb. 14, 2025). A day after being served in the Florida aaction, Plaintiff finally served Defendant in the current action. ECF No. 6 ("Summons").

Plaintiff's current action is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, against Defendant and various Does believed to have a "potential interest" in Defendant's trademark.[3] Compl. ¶ 3 Plaintiff asks the court to declare that Plaintiff's use of the EXO SKIN mark does not constitute trademark infringement or otherwise violate any "federal, state, or

---

[1] Although the first action was dismissed on January 24, 2025, Defendant only became aware of it at the beginning of February 2025 after it was already dismissed, when Defendant discovered the action on its own accord. Def.'s Mot. at 8.

[2] The court takes judicial notice of the Florida action and its public docket entries under Federal Rule of Evidence 201.

[3] To the extent that Plaintiff raises any claims that are independent of the Declaratory Judgment Act, these still warrant dismissal under either Federal Rules of Civil Procedure 12(b)(2) or 12(b)(6) for the reasons discussed below.

2

common law rights" and, specifically, that Defendant's "demands lack merit due to distinct differences between the parties' goods and services, the marks, and the actual use of the marks in the marketplace, which minimize any likelihood of consumer confusion." *Id.* at 5–6. It additionally seeks injunctive relief, prohibiting Defendants from legally challenging or otherwise interfering with Plaintiff's use of the mark. *Id.* at 6.

Defendant brings a motion to dismiss the claims against it on alternative grounds: (1) Plaintiff's lack of standing, (2) lack of personal jurisdiction over Defendant, (3) the court's discretion under the Declaratory Judgment Act, and (4) improper venue. Def.'s Mot. at 1. In the alternative, Defendant seeks a transfer of the case to the U.S. District Court for the Southern District of Florida, where its action against Plaintiff for trademark infringement and unfair competition is pending. *Id. See also* ECF No. 26 ("Def.'s Reply"). Plaintiff fully opposes the motion. ECF No. 23 ("Pl.'s Resp.").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) enables a court to dismiss a claim for lack of subject matter jurisdiction. The burden of establishing subject matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To meet this burden, a plaintiff "must allege in its pleading the facts essential to show jurisdiction and must support those facts by competent proof." *U.S. ex Rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 551 (10th Cir. 1992) (citation modified). The party bringing a Rule 12(b)(1) motion "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In reviewing these factual challenges, the "court may not presume the truthfulness of the complaint's

factual allegations" and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*

Similarly, Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a claim for lack of personal jurisdiction. "[P]laintiffs bear the burden of establishing personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). When "the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The [well-plead] allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). But "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*

## DISCUSSION

### I. Standing and Mootness

Defendant argues that this case should be dismissed under Rule 12(b)(1) because Plaintiff lost standing, and thus subject matter jurisdiction, when it assigned its rights in the EXO SKIN mark several weeks after commencing this action on January 8, 2025. Def.'s Mot. at 6. *See Hill v. Vanderbilt Cap. Advisors, LLC,* 702 F.3d 1220, 1224 (10th Cir. 2012) (noting that "standing [is] an element of subject matter jurisdiction"). To support this argument, Defendant presents evidence that Plaintiff assigned "all its right, title[s,] and interest in and to" various trademarks, including

4

the EXO SKIN mark, to an Emirati company on January 30, 2025.[4] ECF No. 17-1 ("Pl.'s Assignment"). Defendant cites a non-precedential Tenth Circuit opinion holding that an assignment defeated standing. Def.'s Mot. at 6 (citing *Yeager v. Fort Knox Sec. Prods.*, 672 F. App'x 826, 830 (10th Cir. 2016) (unpublished)). Plaintiff responds that the assignment here does not eliminate its standing because it continues to have a "commercial interest[ ]" in the "sales of EXO SKIN products," which may be jeopardized by Defendant's legal challenges. Pl.'s Resp. at 5; ECF No. 23, Ex. A ("Pl.'s Decl.") ¶¶ 8–9. Separately, Plaintiff argues that the assignment does not defeat standing because it retains a "legal interest[ ] via active [Trademark Trial and Appeal Board] oppositions against Defendant's [trademark] applications." Pl.'s Resp. at 5; Pl.'s Decl. ¶ 8.

Although the parties characterize this dispute in terms of standing, it instead implicates mootness. "Standing is determined as of the time the action is brought," but later developments that deprive the plaintiff of a sufficient stake in the ligation are governed by the distinct doctrine of mootness. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005); *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) ("It is the doctrine of *mootness*, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit.") (citation modified) (emphasis in original). *See also Nova Health Sys.*, 416 F.3d at 1155 n.5 (clarifying that a previous Tenth Circuit opinion finding that a plaintiff "had lost standing in the middle of a lawsuit" in fact addressed "a mootness question") (citation modified); *Nauman v. Wormuth*, No. 23-2102-DDC-TJJ, 2024 WL 4973448, at *4 (D. Kan. Dec. 4, 2024) (finding that a standing challenge based on a "post-complaint intervening event" was in substance a mootness challenge). There are important substantive differences between the two doctrines. Whereas the

---

[4] The court takes judicial notice of the assignment under Federal Rule of Evidence 201.

plaintiff has the burden to establish standing, the defendant "bears the burden to establish that a once-live case has become moot." *West Virginia*, 597 U.S. at 719. And there are various exceptions under mootness doctrine that do not apply to standing.[5] *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190–92 (2000).

Regardless, the parties still address the fundamental question of mootness doctrine, whether "a case or controversy no longer exists." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008). Moreover, mootness is a threshold issue that implicates this court's subject matter jurisdiction and must be independently addressed by the court. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010); *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). The court thus construes Defendant's request to dismiss for lack of standing as a request to dismiss for mootness under Rule 12(b)(1).[6]

In doing so, the court considers whether Defendant has met its burden of establishing that a live controversy no longer exists. This requires determining whether Plaintiff still has "a concrete interest, however small, in the outcome" of the case, with any evidence presented to the court evaluated in the light most favorable to Plaintiff. *Prison Legal News v. Fed. Bureau of Prisons*,

---

[5] None of these exceptions apply to the present case.

[6] The court notes separately that Plaintiff has adequately met its burden to establish standing at the time the complaint was filed. "To demonstrate standing, a plaintiff must show that '(1) it has suffered [or imminently will suffer] an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *People for Ethical Treatment of Prop. Owners v. United States Fish & Wildlife Serv.*, 852 F.3d 990, 996–97 (10th Cir. 2017) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)). Plaintiff alleged that it would suffer an injury-in-fact through Defendant's threatened litigation, and this injury clearly would be traceable to Defendants and be redressed by the declaratory and injunctive relief that Plaintiff sought. *See* Compl. ¶¶ 10–14. Defendant presents no evidence that undermines these allegations.

944 F.3d 868, 880 (10th Cir. 2019) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012)). When, as here, plaintiffs seek prospective relief, "[t]he crux of the mootness inquiry . . . is whether the court can afford meaningful relief that 'will have some effect in the real world.'" *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (quoting *Rio Grande,* 601 F.3d at 1110)).

Ultimately, the court concludes that Defendant has not met its burden of establishing mootness. Defendant argues that Plaintiff's assignment contradicts its assertion that it retains some commercial interest in EXO SKIN products. Def.'s Reply at 1–2. In doing so, it relies on the following provision of the assignment:

> ASSIGNOR hereby conveys, assigns[,] and transfers to the ASSIGNEE . . . all its rights, title and interest in and to the Marks [including EXO SKIN], . . . together with the goodwill of the business symbolized by the Marks and *that portion of the ongoing and existing business* of the ASSIGNOR and all intellectual property rights to which the Marks pertain.

Pl.'s Assignment at 9 (emphasis added). But this provision, when interpreted in the light most favorable to Plaintiff, may not completely revoke Plaintiff's commercial interest in EXO SKIN products. The provision may assign Plaintiff's ability to directly produce and sell EXO SKIN products without otherwise limiting Plaintiff's ability to benefit financially from EXO SKIN products as a supplier or through royalties. This alternative interpretation is supported by Plaintiff's own declaration, which asserts that it retains a commercial interest. Pl.'s Decl. ¶ 8. In summary, it appears that Plaintiff may have an ongoing commercial interest in EXO SKIN products and, consequently, may have a concrete stake in the litigation as it seeks to protect the sale of these

products against legal challenges from Defendant.[7] Therefore, Defendant has not established that this case is moot.

## II. Personal Jurisdiction

Next, the court addresses Defendant's request to dismiss the claims against it under Rule 12(b)(2) for lack of personal jurisdiction. The court "may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable [state] statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). In the present case, this collapses into a single due process inquiry because Utah's long-arm statute "assert[s] jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78B-3-201; *XMission*, 955 F.3d at 839.

For this "court 'to exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice.'" *XMission*, 955 F.3d at 839 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)). These "contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* at 839–40 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Personal jurisdiction can be based on either general or specific jurisdiction.

---

[7] Insofar as Plaintiff's successor continues to sell EXO SKIN products in the same manner, a declaratory judgment holding that Plaintiff's use of the EXO SKIN mark was lawful would help protect Plaintiff's successor—and, consequently, advance Plaintiff's commercial interest in the ongoing sale of EXO SKIN products. *See* Compl. at 5–6.

*Id.* at 840. A party "is subject to general jurisdiction within a State if its contacts with the State are so 'continuous and systematic' that the person is essentially at home in the State." *Id.* at 840 (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017)). When general jurisdiction is established, the court may exercise jurisdiction for any claim. *Id.* By contrast, specific jurisdiction "allows a court to exercise jurisdiction . . . only for claims related to the defendant's contacts with the forum State." *Id.* To establish a prima facie case for specific jurisdiction, the plaintiff must show "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Even when the evidence is interpreted in the light most favorable to Plaintiff, it still has failed to establish personal jurisdiction. Plaintiff clearly has failed to establish general jurisdiction. The exercise of general jurisdiction over a corporate defendant is typically limited to "[its] place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Neither of these categories apply. General jurisdictional may extend beyond these two categories in an "exceptional case" where a corporate defendant's operations in a state are "so substantial and of such a nature as to render the corporation at home in that [s]tate." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). But Defendant's minimal connections to Utah do not come close to meeting this demanding standard. To establish Utah connections, Plaintiff alleges that Defendant "sells skincare products from a retail location within the state of Utah" in Park City and has "internet marketing accessible to consumers in Utah" in addition to its communication with Plaintiff's Utah-based counsel. Compl. ¶ 2. In fact, the retail location is not operated by Defendant but rather by an independent retailer that purchases Defendant's products wholesale. ECF No. 16-1 at 2–3 ("Def.'s Decl."). And Defendant "has made no more than nineteen

9

sales to customers in Utah," which is "less than . . . 001% of its total sales." *Id.* at 2. These meager ties clearly do not make Plaintiff at home in Utah.

With respect to specific jurisdiction, Plaintiff asserts three ways in which Defendant purposely directed its activities at Utah: (1) it communicated with Plaintiff's counsel who was located in Utah, which included sending a cease-and-desist letter to Utah; (2) via its website, Defendant sold products to customers in Utah and directed customers to a retail location in Utah; and (3) Defendant operates a retail presence in Utah. Pl.'s Reply at 8–9. However, these connections are insufficient to justify personal jurisdiction.

The first contact only implicates Utah given the happenstance of Plaintiff's choice of counsel and thus fails to qualify as conduct purposefully directed at Utah under any of the three relevant frameworks, (1) continuing relationships, (2) market exploitation, and (3) harmful effects.[8] *Old Republic*, 877 F.3d at 905. These legal communications—which consisted of no more than a demand letter to Plaintiff's Utah counsel in September 2024 and "multiple communications" via "electronic mailings and telephone calls[ ] between October 2024 and December 2024"—fall well short of "continuing relationships with forum state residents." Pl.'s Decl. ¶ 3; *Old Republic*, 877 F.3d at 905. And these communications did not involve "deliberate exploitation of the [Utah] market" or create any "harmful effects in [Utah]." *Old Republic*, 877 F.3d at 905. In fact, it appears

---

[8] If the court were to apply the alternative purposeful availment requirement rather than purposeful direction, it would reach the same result. Defendant did not purposefully avail "itself of the privilege of conducting activities or consummating a transaction in the forum state" merely by communicating with Plaintiff's Utah-based lawyer. *Dudnikov*, F.3d at 1071. Indeed, purposeful availment derives from "the shared aim . . . to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475). Defendant's minimal contacts with Utah clearly fail to justify exercising personal jurisdiction under this broader principle, regardless of what specific label is applied.

that Defendant only interacted with Plaintiff's counsel in his capacity representing an Australian entity; these interactions likely only had beneficial effects in Utah through yielding more business for Plaintiff's counsel, with any harm landing on the other side of the Pacific. In summary, Defendant's connection to Utah via Plaintiff's counsel is the kind of "'random, fortuitous, or attenuated' contacts [a party] makes by interacting with other persons affiliated with the State" that is insufficient to justify personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King,* 471 U.S. at 475). This conclusion is confirmed by numerous cases noting that communication with a forum state resident by itself is often insufficient for personal jurisdiction. *See, e.g.*, *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."); *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1200–01 (D. Kan. 2000) ("Mail and phone communications sent to plaintiff in the forum state are insufficient to support specific jurisdiction over a nonresident defendant.").

The other contacts similarly fail to suffice because this case does not arise out of or relate to Defendant's commercial activity allegedly directed at Utah. In the current action, Plaintiff is not challenging Defendant's efforts to sell its own products, whether online or in Park City, but rather is seeking to protect EXO SKIN products from Defendant's legal challenges. *See* Compl. at 5–6. Therefore, this case cannot arise from Defendant's efforts to sell its product in Utah when the complaint focuses exclusively on Defendant's threatened litigation. *See Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1224 (10th Cir. 2021) (holding that the "plaintiff's claim [must] arise[ ] from essentially the same type of [purposely directed] activity" to justify specific jurisdiction).; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021) ("[T]here must be an affiliation between the forum and the underlying controversy.") (citation modified).

Accordingly, the court finds that Plaintiff has not met its burden of showing that this court would be justified in exercising personal jurisdiction over Defendant. The lack of personal jurisdiction justifies dismissing all the claims against Defendant, and the court has no need to address the party's arguments about venue.[9]

### III.  The Declaratory Judgment Act

Additionally, Plaintiff's current action seeking a declaratory judgment warrants dismissal under the Declaratory Judgment Act.[10] The Declaratory Judgment Act gives the court jurisdiction to grant declaratory relief, but this jurisdiction is discretionary and need not be exercised by the court. 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.") Correspondingly, the court "is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." *Wilton*, 515 U.S. at 288. When exercising its

---

[9] Because Defendant only requests a transfer under 28 U.S.C. § 1404 in the alternative if there are insufficient grounds to dismiss, the court need not address the request. *See* Def.'s Mot. at 21.

[10] Defendant suggests that this dismissal under the Declaratory Judgment Act should be under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction. Def.'s Mot. at 7. But Rule 12(b)(2) clearly is inapt in this context. While the application of Rule 12(b)(1) is more plausible, the dismissal is "a matter of statutory discretion" and thus appears to not "implicate subject-matter jurisdiction, *i.e.*, the court['s] statutory or constitutional *power* to adjudicate the case." *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1248 (10th Cir. 2008); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis in original). The confusion in how to classify discretionary dismissals under the Declaratory Judgment Act is widely noted. *See, e.g.*, *Inari Med., Inc. v. McCaskey*, 733 F. Supp. 3d 998, 1002–03 (D. Or. 2024); 63 A.L.R. Fed. 2d 51 § 3 (2012). However, in this case, there is no need to decide how the discretionary dismissal under the Declaratory Judgment Act is classified. The facts supporting a discretionary dismissal are undisputed and nothing turns on how the dismissal is classified.

"unique and substantial discretion in deciding whether to declare the rights of litigants," the court should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata;* [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 286; *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980–81 (10th Cir. 2012) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Courts often apply "the first-to-file rule, which provides that when duplicative lawsuits are pending in separate federal courts, the entire action should be decided by the court in which the action was first filed." *ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 1:11-CV-00024-TC, 2011 WL 1899390, at *2 (D. Utah May 19, 2011). However, "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.,* No. 98–4098, 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999) (non-precedential). "District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand." *MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006).

In the present case, the balance of considerations is overwhelmingly against exercising jurisdiction. The first-to-file rule is inapplicable because Plaintiff's filing was made in response to Defendant's cease-and-desist letter and seeks to prosecute a defense against Defendant's

13

threatened trademark infringement claims. *See Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06-2551-CM, 2007 WL 2402723, at *2 (D. Kan. Aug. 17, 2007) ("An improper anticipatory filing is one made under threat of a presumed adversary filing in a different district of the 'mirror image' of that suit."); *ICON Health & Fitness*, 2011 WL 1899390, at *3 (noting that "a declaratory suit is immediately suspect as an improper anticipatory filing because a declaratory action, generally speaking, is essentially the prosecution of an affirmative defense") (citation modified).

Of the five factors, four weigh powerfully against exercising jurisdiction and the fifth is inapplicable. First, the current declaratory action is unlikely to settle the controversy because it does not include all the claims and parties involved in the Florida action, including Plaintiff's distributor and the current owner of the trademark, both of whom are likely outside this court's jurisdiction.[11] Second, the declaratory action is unlikely to serve a useful purpose because the Florida action will almost surely reach resolution much sooner than this case and resolve the legal questions raised in Plaintiff's action.[12] Third, as already discussed, it appears that Plaintiff is merely using this case for the purposes of procedural gamesmanship to prevent Defendant from

---

[11] The Florida action now includes the Emirati assignee who currently owns the EXO SKIN mark. Am. Compl., *Extropin, LLC v. DP Derm, LLC et. Al*, No. 25-cv-20713 (S.D. Fla Mar. 26, 2025), ECF No. 15. While Judge Beth Bloom found that the U.S. District Court for the Southern District of Florida could exercise personal jurisdiction over the assignee, there is no indication that this court can similarly exercise personal jurisdiction over the assignee. Order Denying Dermpapend's Mot., *Extropin, LLC v. DP Derm, LLC et. Al*, No. 25-cv-20713 (S.D. Fla Sep. 26, 2025), ECF No. 65.

[12] Indeed, the Florida action is scheduled to go to trial on May 18, 2026. Scheduling Order, *Extropin, LLC v. DP Derm, LLC et. Al*, No. 25-cv-20713 (S.D. Fla Apr. 18, 2025), ECF No. 29. Defendant represented to the court that the case is still on track for that trial date.

litigating its claims in its chosen forum.[13] Fourth, the Florida action offers a more effective alternative remedy because it both will reach a quicker resolution and will be able to offer more complete relief given that it involves more parties, claims, and potential remedies. The final factor, which involves federalism concerns, is simply not applicable since the Florida action is also pending in federal court.

In summary, exercising jurisdiction over Plaintiff's action for declaratory relief would be a complete waste of resources for the court, the parties, and the public—creating duplicative litigation in Utah as the Florida action resolves the underlying dispute faster and more comprehensively. It is hard to imagine a case where the "pragmatic approach" of the Declaratory Judgment Action speaks more clearly and convincingly against exercising jurisdiction. *St. Paul Fire & Marine Ins. Co. v. Aetna Cas. & Sur. Co.*, 357 F.2d 315, 316 (10th Cir. 1966). Accordingly, the court grants Defendant's motion to dismiss Plaintiff's declaratory judgment action.

## IV.     Doe Defendants

The court similarly dismisses the claims against the Doe defendants under the Declaratory Judgment Act for the reasons articulated above. Alternatively, the court dismisses the claims against the Doe defendants without prejudice under Federal Rule of 12(b)(6) for failure to state a claim. Although it should not be done lightly, the "court may dismiss sua sponte [under Rule 12(b)(6)] 'when it is patently obvious' that the plaintiff could not prevail on the facts alleged.'" *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quoting *McKinney v. State of Okl., Dep't of Hum. Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991)). Here, "Plaintiff provides no

---

[13] At oral argument, Plaintiff's counsel provided no satisfactory explanation for why Plaintiff brought this action since Plaintiff is fully able to raise the legal arguments brought in this action as defenses in the Florida action.

specifics about the . . . Doe [d]efendants" and, consequently, "[i]t is patently obvious to this [c]ourt that Plaintiff could not prevail on the facts alleged against Doe [d]efendants." *Goodwin v. Hatch*, No. 16-CV-00751-CMA-KLM, 2018 WL 3454972, at *11 (D. Colo. July 18, 2018), *aff'd,* 781 F. App'x 754 (10th Cir. 2019). Thus, dismissing the claims against the Doe defendants is justified. *See also Al-Turki v. Tomsic*, No. 15-CV-00524-REB-KLM, 2016 WL 1170442, at *5 (D. Colo. Mar. 25, 2016), *vacated in part,* No. 15-CV-00524-REB-KLM, 2018 WL 10426209 (D. Colo. Mar. 30, 2018), *aff'd*, 926 F.3d 610 (10th Cir. 2019) (reaching the same result). This result may in fact be constitutionally required because allowing claims against Doe defendants to proceed without any notice or process or identified defendants representing their interest may "offend basic notions of due process." *Goodwin*, 2018 WL 3454972, at *11. *See also Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 424 (E.D. Pa. 1998) (raising this constitutional concern).

## CONCLUSION AND ORDER

For the reasons above, the court GRANTS Defendant's motion to dismiss this action in its entirety.

DATED December 4, 2025.

BY THE COURT

Jill N. Parrish
United States District Court Judge